IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **Bassam A. Annous, Ph.D.**, <br> 401 Hopkins Court <br> North Wales, PA 19454, <br><br> Plaintiff, <br><br> v. <br><br> **University of Illinois at Urbana-Champaign**, <br> c/o Office of Technology Management <br> 319 Ceramics Building, MC-243 <br> 105 South Goodwin Avenue <br> Urbana, IL 61801, <br><br> and, <br><br> **The Board of Trustees of the University of Illinois**, <br> 506 S. Wright St., # 352 <br> Urbana, IL 61801, <br><br> and, <br><br> **Hans-Peter M. Blaschek, Ph.D.**, <br> Professor Emeritus, <br> c/o Dep't of Food Science <br> 260 Bevier Hall, MC-182 <br> 905 S. Goodwin Avenue <br> Urbana, IL 61801, <br><br> and, <br><br> **Eastman Chemical Company**, <br> 200 S. Wilcox Drive <br> Kingsport, TN 37660 <br><br> Defendants. | Case No. _____ <br><br> Judge _____ <br><br> Magistrate _____ <br><br> **COMPLAINT FOR BREACH OF CONTRACT, QUANTUM MERUIT, CONVERSION, DECLARATORY JUDGMENT, AND FRAUD** <br><br> *(Jury Demand Endorsed Hereon)* |

Plaintiff's Complaint - 1

- 1 -

NOW COMES the Plaintiff, *Bassam A. Annous, Ph.D. ("Dr. Annous")*, and for his Complaint against the Defendants hereby allege as follows:

## THE PARTIES

1. The Plaintiff, Dr. Annous, is a real person that resides in the State of Pennsylvania. Dr. Annous is a leading scientist with the U.S. Department of Agriculture ("USDA") working in their Food Safety and Intervention Technologies Research Unit.

2. The Defendant, University of Illinois at Urbana-Champaign, is a public research university in the State of Illinois.

3. The Defendant, The Board of Trustees of the University of Illinois, is the governing body of the University of Illinois.

4. The Defendant, Hans-Peter M. Blaschek, Ph.D., is a professor emeritus at the University of Illinois at Urbana-Champaign, in the Department of Food Science and Human Nutrition. Upon information and belief, Dr. Blaschek resides in the State of Illinois.

5. The Defendant, Eastman Chemical Company, upon information and belief, is a business entity incorporated in Delaware with its principal place of business located in the State of Tennessee.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to diversity of citizenship principles as the parties are from different states and the amount in controversy exceeds $75,000. There are state law claims arising under Illinois law.

7. In addition to diversity jurisdiction, this Court also has federal question jurisdiction as Plaintiff also states claims arising under the laws of the United States, specifically 28 U.S.C. § 2201 for a Declaratory Judgment.

8. Although patent infringement is not alleged, this dispute does involve ascertaining the rights to issued U.S. Patents, and as such, the Court has federal question jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331, 1338, and 35 U.S.C. § 281 *et seq*. The Court has ancillary jurisdiction over the state law claims.

9. This Court has personal jurisdiction over the Defendants by virtue of their conduct within the State of Illinois, within this judicial district and elsewhere.

10. Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) and/or 28 U.S.C. § 1400(b) because a substantial part of the events giving rise to the claims occurred in this judicial district, the Defendants are subject to personal jurisdiction in this district, and the parties entered contractual relations within this judicial district.

## FACTUAL ALLEGATIONS

11. On March 19, 2002, United States Utility Patent No. 6,358,717 (the '717 patent) legally and duly issued to Dr. Blaschek, Dr. Annous, Joseph Formanek, and Chih-Kuang Chen, as inventors. All rights to the '717 patent were assigned to the Defendant, The Board of Trustees of the University of Illinois.

12. The '717 patent teaches a method of producing butanol using a mutant strain of *Clostridium beijerinckii*. (A true an accurate copy of the '717 patent is attached hereto as an exhibit.)

13. Development of the '717 was a major breakthrough in the production of butanol, a biofuel and solvent. The invention doubled the capacity of butanol in batch reactors. The invention

revolutionized the biofuel industry as butanol is a superior fuel to ethanol and contains 33% more energy on a per gallon basis.

14. At times relevant, the inventors to the '717 patent were employed by the University of Illinois at Urbana-Champaign, in the Food Science and Human Nutrition Department.

15. The inventors, including Plaintiff, invented the '717 patent while working at the University of Illinois.

16. The inventors to the '717 patent had a written agreement with the University of Illinois entitled a "Proceeds Distribution Agreement," with Agreement No. A06363. (See a true and accurate copy of the contract attached hereto as an exhibit.)

17. The Proceeds Distribution Agreement was for OTM Technology No.: T96023 (Title of Technology: "Hyper-butanol producing strains of C. beijerinckii-ICMB") (which was also known as "BA101").

18. The T96023 technology ("BA101") matured into the '717 patent.

19. Under the agreement, Dr. Annous was to receive forty percent (40%) of the "Creator's Proceeds." The "Creators" were to receive forty percent (40%) of Net Revenue realized from the technology. So, in essence, Dr. Annous was to receive 40% of 40% of Net Revenue realized, which equals sixteen percent (16%) of Net Revenue.

20. The '717 patent was licensed by the University of Illinois to Defendant, Eastman Chemical. (See a true and accurate copy of a letter attached hereto from the University of Illinois at Urbana-Champaign, Office of Technology Management, written to Plaintiff, dated February 12, 2013, which includes said admission.)

21. Prior to licensing the '717 to Eastman Chemical, the '717 was licensed to Tetra Vitae BioSciences, which was a start-up entity formed by Dr. Blaschek, which was entirely built around BA101. The University of Illinois sent Dr. Annous a check for $1,296 as payment for a license to Tetra Vitae BioSciences.

22. In 2011, Dr. Blaschek sold Tetra Vitae BioSciences to Eastman Chemical, upon information and belief, for Five Million Dollars ($5,000,000.00). See, http://www.eastman.com/Pages/Tetravitae_Bioscience.aspx. (See a true and accurate copy of the screenshot attached hereto.)

23. Ten Thousand Dollars ($10,000) was sent to Dr. Annous purportedly for the sale of Tetra Vitae BioSciences to Eastman Chemical.

24. Under the Proceeds Distribution Agreement, Dr. Annous should have received sixteen percent (16%) of the Five Million Dollars paid for the BA101 patent. Plaintiff is owed $800,000, possibly less the $10,000 paid to him.

25. Dr. Blaschek never would have been able to sell Tetra Vitae for Five Million Dollars unless Dr. Annous told him exactly which cultures to use after the original BA101 became contaminated in 2009. (See 2009 email string between Dr. Annous and Steven Stoddard of Tetra Vitae attached hereto as an exhibit.)

26. Dr. Blaschek converted Dr. Annous' work product for his own financial gain and he has been unjustly enriched by Dr. Annous' work.

27. Upon information and belief, Plaintiff contends that Dr. Blaschek may also have received compensation for BA101 from BP, DuPont, and possibly others, for licensing, for which Dr. Annous has not been fairly compensated. Discovery into these facts is needed.

28. Furthermore, upon information and belief, and to be determined in discovery, the Defendants have profited from BA105, which could not have been possible but for Plaintiff's work. BA 105 is one of nine strains Plaintiff isolated including the BA 101. Defendants are profiting from BA 105 since BA 101 was transferred to Eastman. There are other seven isolates that Defendant Blaschek controls now to which profits are likely owed Plaintiff.

## CLAIM NO. 1
*(Breach of Contract)*
(Claim 1 is against Defendants: 1) The University of Illinois at Urbana-Champaign, and 2) the Board of Trustees of the University of Illinois.)

29. The Plaintiff hereby incorporates by reference each statement, whether written above or below, as if each is fully re-written herein.

30. Under Illinois law, there are four elements to a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199, 741 N.E.2d 605, 611 (Ill. App. 1999).

31. If all these elements are met, the non-breaching party may sue immediately for breach of contract and seek recovery of damages. "In determining damages, it is fundamental that a monetary award should, to the extent possible, put the nonbreaching party in the position he would have been in had the contract been performed." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 634 N.E.2d 418 (Ill. App. 1994).

32. In this case, there is a valid and enforceable contract between Plaintiff, on the one hand, and the University of Illinois (and its Board of Trustees), on the other. The contract is the Proceeds Distribution Agreement.

33. Plaintiff performed under the agreement as a University Creator and was an inventor of BA101 and subsequently the '717 patent.

34. Said Defendants failed to pay Plaintiff 40% of the 40% Creator's Share that was owed and due to Plaintiff.  Upon information and belief, the '717 was sold as an asset of Tetra Vitae to Eastman Chemical for Five Million Dollars.  Plaintiff is due $800,000 as his share.

35. Plaintiff suffered injury by way of financial damages as a direct and proximate result of Defendants' breach.  Plaintiff is entitled to contractual damages, including direct, consequential, and incidental damages arising from the breach of contract.

### CLAIM NO. 2
*(Quantum Meruit – Unjust Enrichment)*
(Claim 2 is against all Defendants.)

36. The Plaintiff hereby incorporates by reference each statement, whether written above or below, as if each is fully re-written herein.

37. A contract implied by law, or a quasi-contract, "arises by implication of law wholly apart from the usual rules relating to contracts and does not depend on an agreement or consent of the parties.  A contract implied in law is equitable in nature, predicated on the fundamental principle that no one should unjustly enrich himself at another's expense." *In re Estate of Milborn*, 122 Ill. 1-14-1599 11 App. 3d 688, 690 (1984); see *Martis v. Pekin Memorial Hospital, Inc.*, 395 Ill. App. 3d 943, 952 (2009) ("The theory of unjust enrichment is based on a contract implied in law.").

38. "[I]n order to state a claim based upon a contract implied in law, a plaintiff must allege specific facts in support of the conclusion that it conferred a benefit upon the defendant which the defendant has unjustly retained in violation of fundamental principles of equity

and good conscience." *Karen Stavins Enterprises, Inc. v. Community College Dist. No. 508*, 2015 IL App (1st) 150356, ¶ 7.

39. A plaintiff must similarly demonstrate that defendants "unjustly retained a benefit to the plaintiff's detriment, and that defendant[s'] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989).

40. An unjust enrichment claim is an action at law and is sometimes known as a contract implied at law, a quasi-contract, restitution, or assumpsit. *Blumenthal v. Brewer*, 2014 IL App (1st) 132250, ¶ 12. A plaintiff is permitted to plead breach of contract claims in addition to unjust enrichment. *Bureau Service Co. v. King*, 308 Ill. App. 3d 835, 841 (1999) (a complaint may properly plead alternative theories of recovery despite their apparent inconsistency).

41. Pled in the alternative to a contract between the parties, Plaintiff alleges that the Defendants have unjustly enriched themselves at Plaintiff's expense.

42. Plaintiff here conferred a benefit upon the Defendants which the Defendants have unjustly retained in violation of fundamental principles of equity and good conscience.

43. The Plaintiff conferred financial benefits to the University of Illinois at Urbana-Champaign and to the Board of Trustees. Said Defendants received revenue from Plaintiff's invention, which they have unjustly retained.

44. The Plaintiff conferred financial benefits to Dr. Blaschek. Dr. Blaschek has taken credit for Plaintiff's BA101 research and the resulting '717 patent. Dr. Blaschek could not have achieved the successes of the resultant intellectual property but for Plaintiff's work. Further,

emails between Plaintiff and Tetra Vitae as recent as 2009 show that Dr. Blaschek was still utilizing Plaintiff's BA101 work (emails attached hereto).

45. The Plaintiff also conferred benefits to Eastman Chemical. Eastman Chemical apparently has enjoyed the '717 invention under license. Plaintiff has not been compensated for that.

46. Eastman Chemical purchased Tetra Vitae purportedly for Five Million Dollars. The '717 patent was the gravamen of that acquisition. Dr. Blaschek, and possibly the University of Illinois, gained financially from that transaction. Plaintiff has not been fairly compensated for his contributions to BA101 and the '717 patent invention. Permitting Defendants to retain these benefits would be unfair.

## CLAIM NO. 3
*(Conversion)*
(Claim 3 is against Dr. Blaschek.)

47. The Plaintiff hereby incorporates by reference each statement, whether written above or below, as if each is fully re-written herein.

48. To prove conversion, a plaintiff must demonstrate the following by a preponderance of the evidence: (1) defendant's unauthorized and wrongful assumption of control, dominion, or ownership over plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) plaintiff's demand for possession of the property. *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 346 Ill. App. 3d 996, 1003 (2004).

49. Upon information and belief, Dr. Blaschek received significant sums from Tetra Vitae and Eastman Chemical for the 717 patent.

50. Dr. Blaschek has converted money owed to the Plaintiff for the licensing of the '717 patent.

51. Dr. Blaschek has wrongfully taken control over money that should have been earmarked and given to Plaintiff for his contributions to the '717 patent.

52. Plaintiff's right to revenues generated from his BA101 research and the '717 patent is obvious from the face of the '717 patent and the Proceeds Distribution Agreement.

53. Plaintiff has a right to receive money that is due and owing to him, and has not, despite his demands for same. Dr. Blaschek urged Plaintiff not to hire an attorney to pursue this matter, but nonetheless, has done nothing to right the situation with Plaintiff.

### CLAIM NO. 4
*(Declaratory Judgment)*
(Claim 4 is against all Defendants.)

54. The Plaintiff hereby incorporates by reference each statement, whether written above or below, as if each is fully re-written herein.

55. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, 2202, and Rule 57 of the F.R.C.P., provides the Court the ability to issue a declaration declaring the rights and legal relations between the parties.

56. Here, there is a contract at issue between Plaintiff and the University of Illinois. Dr. Blaschek is also a party to that agreement. The '717 patent is also at issue since it is the invention at issue. The '717 patent was assigned to the Board of Trustees for the University of Illinois. Eastman Chemical is apparently a licensee under the '717 patent, to which Plaintiff is an inventor.

57. Further, the Bayh-Dole Act, 35 U.S.C. § 200 *et seq.*, provides authority for patent rights in inventions made with federal assistance, which is the case here with BA101 and the '717 patent.

58. Based on the posture of the parties and relevant law outlined herein, which may not be exhaustive, the Plaintiff respectfully requests that the Court issue a Declaratory Judgment as to the legal rights and relations between the parties.

### CLAIM NO. 5
(*Fraudulent Misrepresentations and/or Omissions*)
(Claim 5 is against Defendants Blaschek and the University of Illinois)

59. The Plaintiff hereby incorporates by reference each statement, whether written above or below, as if each is fully re-written herein.

60. The Defendants and Plaintiff had a special or fiduciary relationship based on their written Agreement to share profits from Plaintiff's Creation (BA101). *Greenberger v. GEICO Gen. Ins. Co.,* 631 F.3d 392, 401 (7th Cir. 2011).

61. Because of this special or fiduciary relationship between the parties, the Defendants had a duty to disclose to Plaintiff that Tetra Vitae (formed around BA101) was sold for Five Million Dollars ($5,000,000) and that Plaintiff's full and fair 16% share of the profits per the Agreement was Eight Hundred Thousand Dollars ($800,000).

62. Plaintiff trusted Defendants that, in the event of such a sale, he would be informed of the accurate amount of the sale and paid his 16% pro rata share accordingly.

63. Defendants breached Plaintiff's trust by fraudulently and intentionally omitting the material fact that Tetra Vitae was sold for Five Million Dollars ($5,000,000), and by fraudulently misrepresenting to Plaintiff that Ten Thousand Dollars ($10,000.00) represented the full and fair value of his 16% share of the sale of Tetra Vitae pursuant to the parties' Agreement.

64. As further evidence of Defendant Blaschek's intent to defraud the Plaintiff, Blaschek fraudulently misrepresented that Blaschek alone was responsible for the work done on

BA101. Defendant Blaschek wrote this misrepresentation in a reference letter for the Plaintiff, even though the Plaintiff's dissertation scientifically proving BA101's efficacy was published many years prior to Blaschek's reference letter.

65. The Defendants' grossly fraudulent omissions and/or misrepresentations were made intentionally, willfully, and maliciously, for the purpose of injuring Plaintiff by depriving him of Eight Hundred Thousand Dollars ($800,000), and the future opportunity cost thereon.

66. The Defendants' conduct was outrageous and akin to the crime of theft by deception. 720 ILCS 5/16-1(2).

67. The Defendants' willful, malicious, intentional, outrageous, and grossly fraudulent conduct justifies punitive damages. *AMPAT/MIDWEST v. Illinois Tool Works ("AMPAT")*, 896 F.2d 1035, 1043 (7th Cir. 1990) (internal citations and quotations omitted).

68. Even if malicious intent cannot be shown, that Defendants acted in willful disregard of the harm to Plaintiff (recklessness) is enough to sustain a count for fraudulent misrepresentation where, as here, the fraud "…was designed to make money…" *AMPAT* at 1040.

69. Defendant Blaschek, as founder of Tetra Vitae, negotiated the sale of the company to Defendant Eastman Chemical on behalf of Defendant University of Illinois. Defendant University of Illinois profited from this sale. As such, Defendant Blaschek acted in a managerial capacity for Defendant University of Illinois.

70. In addition to Defendant University of Illinois' independent duty to disclose the value of the sale to the Plaintiff as a party to the Agreement, the University authorized or ratified Defendant Blaschek's fraudulent misrepresentations and/or fraudulent omissions in that the University also refused to provide accurate sale numbers to the Plaintiff upon his request.

71. Defendant University of Illinois sent the check for Ten Thousand Dollars ($10,000) to the Plaintiff, fraudulently misrepresenting that this amount reflected his full 16% share of profit.

72. For these reasons, Defendant University of Illinois and Defendant Blaschek are both liable for punitive damages arising from fraudulent misrepresentation and/or fraudulent omission. *Annotta v. Subway Sandwich Shops,* 125 F.3d 503, 513 (7th Cir. 1997) (internal citations and quotations omitted).

## PRAYER FOR RELIEF / REQUEST FOR REMEDIES

WHEREFORE, the Plaintiff prays that this Court enter an Order in Plaintiff's favor and against the Defendants, jointly and severally, as follows:

A) A preliminary and permanent injunction enjoining the Defendants from licensing the '717 patent or any other derivative inventions from BA101 or BA105 or the '717 patent without compensating Plaintiff pursuant to the Invention Proceeds Distributions Agreement;

B) An accounting for damages resulting from Defendants' conduct;

C) An assessment of interest on the damages so computed;

D) An award of attorney's fees and costs in this action;

E) Judgment against Defendants for an accounting and monetary award in an amount to be determined at trial as to each cause of action pled herein;

F) Requiring Defendants to disgorge any and all profits derived by BA101, BA105, or the '717 patent or any derivatives or continuations thereto;

G) An award of punitive damages against Defendants Blaschek and the University of Illinois;

H) Requiring Defendants to file with this Court and serve on the Plaintiff within thirty (30) days of this Court's order a report setting forth the manner in which they complied with the order;

I) Damages according to each cause of action herein;

J) Prejudgment interest; and

K) Any such other relief in law or equity that this honorable Court deems just.

## JURY DEMAND

WHEREFORE, the Plaintiff requests a trial by jury on all issues so triable by the maximum number of jurors permitted by law.

Most Respectfully Submitted,

   s/ David A. Welling, *Esq.*
**DAVID A. WELLING (0075934) (lead counsel)**
**C. VINCENT CHOKEN (0070530)**
CHOKEN WELLING LLP
55 S. Miller Rd., Ste. 203
Akron, Ohio 44333
Tel.   (330) 865 – 4949
Fax   (330) 865 – 3777
davidw@choken-welling.com
vincec@choken-welling.com

**JOHN D. GUGLIOTTA (0062809)**
PATENTS + COPYRIGHTS + TRADEMARKS LAW GROUP
3020 W. Market St., Ste. C
Fairlawn, Ohio 44333
Tel.   (216) 696 – 1422
Fax   (216) 696 – 1210
johng@inventorshelp.com

*Counsel for the Plaintiff*